# UNION BUILDING ASSOCIATION

*v.*

# THE CITY OF CHICAGO.

1. VOID ASSESSMENT—*makes void all proceedings dependent upon it.* The city of Chicago made an original assessment which was declared void. A second assessment to make up its deficiencies is also void.

2. EXCESSIVE LEVY VOID. If, after the completion of a work, a levy is made in gross excess of the ascertained cost, it is fraudulent.

3. OFFICIAL OATH. If commissioners are sworn to perform a particular duty, and they proceed to acts not authorized by law nor within the scope of their oaths, their acts are unlawful and their proceedings void.

4. UNLAWFUL ASSESSMENT—*effect of payment of.* Owners of property having paid assessments which are subsequently set aside, can not recover it back, such payment being deemed in law voluntary.

5. REMEDY—*can not be restricted to particular proceedings.* Courts will not impute to the legislature the intention of nullifying the judgments and decrees of courts of general jurisdiction in advance, when it would be

beyond the constitutional power of that body to do so after they were made; and especially in relation to statutory proceedings to divest the citizen of his property without his consent by confining the citizen to a particular mode of seeking his remedy.

6. UNCONSTITUTIONAL LAW—*can not be executed by the courts.* If the legislature has prescribed a mode for making a statutory proceeding effectual which is unconstitutional, the courts have no authority to reject that mode and adopt a different one. The legislature must provide the correction.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. FULLER & SMITH, for the appellant.

Mr. M. F. TULEY, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

It is very apparent, from the record in this case, that the proceedings relative to the original assessment were, from their first inception and through every stage, totally void. In 1858, the street in question was raised to grade, curb walls built upon both sides thereof, filled, and paved with stone pavement, by special assessment upon real estate deemed specially benefited.

Being thus situated, the original ordinance was passed under the recommendation of the board of public works, in the same form, ordering the curb walls on Washington street, from the west line of State to the *east* line of Franklin street, to be rebuilt and repaired where the same were not then in a suitable condition, and said street to be paved with wooden blocks except such portions of the work as had already been done in a suitable manner, the work to be done under the superintendence of the board of public works. The sum of $2887.40 was the basis of the assessment for the curb walls,

$24,790.79 for the paving, $276.78 for engineering and super-intending, and $225 for the costs of the proceeding, making the total sum of $28,179.97

A similar ordinance has been held by this court to vest in the board an improper and illegal discretion, opening the door to fraud, and therefore void. *Foss* v. *The City of Chicago,* 56 Ill. 354.

Not only was the ordinance void for the reason assigned, but the subsequent proceedings, though strictly in conformity with it as to the parts which vitiate, were variant from it as to the description of the work. In the oath of the commissioners, certificate of the completion of the assessment, notice of application to the council for confirmation, and in the assessment roll itself as confirmed, the extent of the improvement was designated as being that portion of Washington street from the west line of State to the *west* line of Franklin street, thus extending the work across Franklin street without any ordinance directing it.

It appears that, at the time of the application for the new ordinance, the work was all completed, and so stated in the commissioners' report, so that the actual cost of it was known to the board; that upwards of $14,000 had been voluntarily paid by the property owners upon the amount assessed upon real estate deemed specially benefited; that the actual cost of the paving, ascertained from reliable data, viz: the contract under which it was done, and a careful measurement by a competent engineer, was only $15,202.00, being $9,585.79 less than the estimated cost which was made the basis of the original assessment, and which actual cost, when added to the $2887.40, the estimated cost of repairing the curb walls, shows the total actual cost—assuming that the item for curb walls was actual—to be $18,092.40. Then, if we deduct the $14,194.03 voluntarily paid by the property owners, we have $3898.37 as the whole amount necessary to pay for the entire work, allowing the sum of nearly $3000 under the provision

for "rebuilding and repairing the curb walls where the same are not now in a suitable condition."

The board of public works, from their position with relation to the matters in question, must be held chargeable with knowledge of all material facts.

When they made application to the council for an ordinance authorizing a new assessment, they stated that the work had been done and fully completed. This made it apparent that they knew what had been the actual cost of it, but no allusion is made to that subject, and they simply state that there was the sum of $8339.15 which the city had failed to collect of the original assessment, and ask an ordinance authorizing them to levy that amount upon what they please to call the delinquent property of the real estate specially benefited.

The council, without inquiry as to the actual cost, pass the ordinance. When the assessment roll is completed under this ordinance, the parcels of land included in it are assessed precisely as they were in the original. Appellant's lands are assessed for $834.28, the exact amount in the original. The new assessment is necessarily upon the same basis as the former. It requires them to pay their proportional share for the paving at the sum of $24,790.19, the amount of the original estimate, instead of $15,205.00, the actual cost. It requires them to pay their proportional share of $225, the estimated costs of proceedings which, as to them, are utterly void. And if the new assessment is to be held valid and the amount collected, then the city will have obtained, perhaps, by divesting the owners of their property after the completion of the work and the actual cost become known to a cent, a sum not far from $4440 above that which is actually necessary to pay for the whole work at its actual cost. Upon what considerations of justice, reason or law, can this be sustained? None have been suggested but the mere letter of the 36th section of chapter 7 of the city charter, (Gary's Laws, 75.) Having departed from both the letter and spirit of the law in every step

through the original proceedings, the city authorities have become rigid adherents to the very letter in the supplementary ones. The counsel for the corporation insists that, under said section, the new assessment must be for the *deficiency* of the former one because the statute says so, and not for the actual cost of the work.

We have given that section much attention and viewed it in every light in which it has been presented by able counsel in the variety of cases before us. It is very peculiar in its provisions, and seems to betray a design not exactly to take away the general jurisdiction of the courts, but to place these original assessments, in a measure, beyond the effects of their decrees and judgments. "If, from any cause," it says, "the city shall fail to collect the whole or any portion of any special assessment which may be hereafter levied, *and which shall not be canceled and set aside by the order of any court upon certiorari or appeal,*" etc., "the common council may, at any time within five years after the confirmation of the original assessment, direct a new assessment to be made upon the *delinquent* property for the amount of such *deficiency* and *interest thereon* from the date of such original assessment, which assessment shall be made as near as may be in the same manner as is herein prescribed for the first assessment." It then declares that, in cases where partial payments shall have been made on the former assessment, they shall be credited; that repeated new assessments may be made, provided they are commenced within said five years; that it shall constitute no legal objection that the property has changed hands meanwhile, and then employs these words: "It being the true intent and meaning of this section to make the cost and expense of all public improvements, to be paid for by special assessment, a charge upon the property assessed therefor for the full period of five years from the confirmation of the original assessment, and for such longer period as may be required to collect in due course of law any new assessment ordered by the common council within that period."

It is manifest that, if the language, "if, from *any* cause, the city shall fail,· etc., to collect, etc., any ·special assessment which „may be hereafter levied, and which shall not be canceled and set aside by the order of any court upon *certiorari* or appeal," be taken literally, the courts would be required to regard an original assessment, when considered in its relation to a second one, as valid, for the purpose of ascertaining a *deficiency*, determining *delinquency*, drawing *interest*, and constituting a *lien* for the period of five years and upwards. Even .though the city may have failed to collect such original assessment by reason of the decree of a court of chancery declaring it void, upon the bill of the property owners alleging that it was made in fraud and through excess of power, because, in such case, it would not "have been canceled and set aside by the order of any court upon *certiorari* or appeal.". If not so canceled and set aside, it is to be regarded as valid for the purposes specified, no matter how many grounds may exist for declaring it void, or what court may have done so in any proceeding other than upon *certiorari* or *appeal*.

The limitation to a judgment upon *certiorari* and appeal, which are seemingly exclusive of other judgments or decrees, has reference to the removal of the record in that mode from the common council to the circuit or Superior Court. We have shown in other decisions how circumscribed and almost impracticable those remedies were made by the charter. *Creote* v. *The City of Chicago*, 56 Ill. 422. Hence we say, that there was apparently. a design on the part of the draughtsman of the section to place these original assessments beyond the reach of judicial power except when that power should be exercised in the circumscribed and, in many instances, impracticable manner specified.

But the section can receive no such literal construction. We will not impute to the legislature the intention of nullifying the judgments and decrees of courts of general jurisdiction in advance, when it would be beyond the constitutional

power of. that body to do so after they were made, and especially in relation to statutory proceedings to divest the citizen of his property without his consent.

Whenever, therefore, the question may be properly presented to a court of competent jurisdiction, whether the proceedings under which an original assessment has been made are valid or not, and they shall be found to be void, for fraud, or want of compliance with the statute, they must be so regarded as to all parties who have not estopped themselves by their acts from questioning them. Any other rule would be to introduce a dangerous, monstrous anomaly into our system, because it would be to declare by judicial authority that, although the original assessment was entirely void as to all parties not estopped by their acts from assailing its validity, yet, even as to such persons, it should be regarded as furnishing the legal standard by which to determine a *deficiency*, as affording a proper basis for *interest*, as constituting a *lien* for the period of five years, and possibly longer, and not to be affected by alienation of the property.

This section 36 was originally embraced in the act of 1863, entitled "An act to reduce the charter of the city of Chicago and the several acts amendatory thereof into one act and revise the same."

By section 21 chapter 7 of that act, the assessment was directed to be made upon the real estate *fronting* upon the street to be improved, requiring each such parcel to sustain the cost and expense of making the improvement upon half of the street directly adjacent. This mode having been declared unconstitutional in the case of *City of Chicago* v. *Larned et al.* 34 Ill. 203, decided at the April term, 1864, the legislature, by an act approved February 15, 1865, and the acts of March, 1867, provided, in accordance with the principle of that decision, that such costs and expense should be assessed by the commissioners upon the real estate by them deemed benefited by any such improvement, and upon the city, in proportion as nearly as might be to the benefits resulting thereto.

Inasmuch as the 21st section provided for an assessment upon *frontage* only, and that was contained in the same chapter of the act containing the 36th section, which declares that the new assessment "shall be made, as near as may be, in the same manner as is *herein* prescribed for the first assessment," it is argued that, because the 21st section contained the only statutory provision relative to the manner of making the first assessment, and inasmuch as *that* was declared unconstitutional and consequently abrogated by the decision in the Larned case, there was then no authority left for making a new assessment. This was, at that time, true.

In *Ross* v. *Irving*, 14 Ill. 182, this court said: "In our view, the law must be carried into effect in the manner prescribed by the act itself or not at all. It is a statutory proceeding, and if the legislature has prescribed a mode for making it effectual which is unconstitutional, the courts have no authority to reject that mode and adopt a different one." This observation is applicable to this feature of the case. When the legislature had provided for a particular mode of making the assessment, and that was held unconstitutional, the courts had no authority to adopt a different one until the legislature had provided it. But the acts of February, 1865, and of March, 1867, providing that the amount directed to be assessed should be upon the real estate deemed benefited by the improvement, and upon the city, in proportion as nearly as might be to the benefits resulting thereto, did provide a different mode from that declared unconstitutional, were amendatory of the act of 1863, and the manner prescribed by the amendatory acts for making the assessment was thereby substituted to the place of that provided for in the 21st section, which was abrogated.

Though the question is not free from difficulty, still we are of the opinion that a new assessment may be made under the 36th section, taken in connection with the amendatory acts of 1865 and 1867, although the original one was illegal and void; but it must be made, as nearly as practicable, in the manner

pointed out in those amendatory acts for a first assessment. The question as to how this is to be done was not, and could not have been, involved in the case of *City of Chicago* v. *Ward*, 36 Ill. 9, because that case was decided at the April term, 1864, and of course before the statute of 1865 was passed.

Nor was it decided in the case of *Laflin et al.* v. *City of Chicago*, 48 Ill. 449. But in the latter case, the court expressly refused to sanction the allowance of interest upon an original assessment which was void.

The effect of the statute authorizing a new assessment is, that the same shall be made, as nearly as may be, in the same manner as is prescribed for the first assessment. It must, in all cases, be a *de novo* proceeding. Its departure from the precise mode of making the first assessment can be justified only so far as may be required by the circumstances of each case. Where no payments have been made, and from the circumstances of the work the amount of the costs and expense rests upon estimates alone, then it must be made in all respects like a first assessment. But when payments have been voluntarily made under the original, in whole or in part, then, although such original assessment may be void, still the payments must be allowed to apply; if in full, they operate to discharge the land in respect to which they were made; if partial, they are a discharge *pro tanto*. It would be against the rules of a sound public policy to permit the city to receive such payments, then alleging the invalidity of its own proceedings, repudiate them, and subject parties, who have acted in the spirit of obedience to the law, to the costs, trouble and expense of overhauling proceedings already carried to full satisfaction by the voluntary acts and mutual consent of competent parties. But payments so made under void proceedings, are to be regarded as good only between the parties making them, and the city; so that, if made under an estimate which turns out to have been too large, the excess can not be made out of the non-paying lands because that would be holding the proceedings valid for the purpose of adjusting supposed

rights between parties who were estopped by their acts from questioning their validity, and those who were not so estopped.

If, then, payments are to be thus allowed, and the proceedings under which they were made to be regarded as void in respect to all parties not estopped by their acts from questioning them—if, as between the paying and the non-paying parties under the original and void assessment, there can be no legal rights for adjustment, then does it not follow that, in making a new assessment under circumstances where the amount must rest on estimates, such estimate should be made and reported as required by the acts of 1867, the whole amount paid under the original deducted from it, and the balance only levied upon the non-paying real estate deemed specially benefited, upon the principle of the equation of burden and benefit? In such case, the matter lies between the non-paying lands under the original assessment, and the city. Real estate, for which payment in full has been made under such original assessment, is no further concerned in the new assessment than as may be necessary for the purpose of ascertaining the ratio of burden and benefit in respect to the other lands on which the balance is to be levied, and the city, as provided in the acts of 1867.

So in this case, where the improvement had been fully completed under the original and void proceedings before any steps were taken in the new ones—where the actual cost was known and found to be far less than the estimated cost in the former proceeding, so that those paying under the former have paid more than their due share, it was not proper, under our views of the question, to take the former estimated cost as the standard in levying the new assessment, and thereby assess lands for which no payments had been made under the old assessment, at the same sum as in such former assessment. But the payments made under the void proceedings must be regarded as purely voluntary, discharging the lands for which they were made, it is true, though not affording ground for a

legal claim upon the balance to be levied on other lands to have any supposed excess refunded.

Such voluntary payments must be applied upon the cost of the work, and the balance unpaid ascertained. The ordinance of the council, after designating such balance, must then specify what amount of such balance shall be assessed upon the property deemed specially benefited, and what chargeable to the general fund. The portion to be assessed upon the real estate deemed specially benefited, must be assessed in the manner, as nearly as may be, for a first assessment.

This new assessment involves a gross departure from the requirements both of the statute and justice, and can not be approved by this court.

There are various other questions made in this case which we shall not refer to. The collector was unauthorized to apply for judgment.

The judgment of the court below will be reversed and the cause remanded.

*Judgment reversed.**

---

* The case of James L. Chapman et al. v. The City of Chicago, an appeal from the Superior Court of Cook county, is controlled by the foregoing opinion, and the judgment of the court below is reversed and the cause remanded.