## THE CITY OF CHICAGO

*v.*

## E. T. NOONAN *et al.*

*Opinion filed April 20, 1904—Rehearing denied June 9, 1904.*

SPECIAL ASSESSMENTS—*public hearing not required in supplemental assessment for deficiency.* Section 59 of the Improvement act of 1897, (Laws of 1897, p. 121,) providing for a supplemental assessment in case of deficiency, contemplates an actual, ascertained deficiency, which can only be known after the work is completed, and that such assessment shall originate by proper petition to the court, without a public hearing or other preliminary steps required in the original assessment.

APPEAL from the County Court of Cook county; the Hon. L. C. RUTH, Judge, presiding.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr.,(EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellant.

JOSEPH H. FITCH, WILLIAM J. DONLIN, and EDWARD T. NOONAN, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal by the city of Chicago from a judgment of the county court of Cook county sustaining objections of certain property owners to a petition filed by it July 9, 1903, for a supplemental assessment to raise the amount of a deficiency in the cost of curbing, grading and paving Colorado avenue from South Fortieth avenue to South Forty-eighth avenue.

The petition states that on September 30, 1901, an ordinance for such improvement was passed by the city council, in pursuance of which an assessment was made and confirmed, which assessment is insufficient to pay the total cost thereof, and that subsequently, on June 8, 1903, a second ordinance was passed for a supplemental special assessment to pay the deficiency. A copy of the second ordinance is attached to the petition, which recites that the cost of the improvement was estimated at $34,500 and an assessment confirmed for $34,274.45, and that the total cost was $46,986.55, making a deficiency of $12,712.10. A copy of the engineer's estimate of the deficiency, and of the recommendation of the board of local improvements to the city council that such supplemental ordinance be passed, were also attached to the petition. On the hearing of the legal objections in the court below it was admitted by the city that no public hearing was ever had by the board of local improvements concerning such deficiency or the estimate thereof as made by the engineer, and that no resolution fixing a time or place for a public hearing, and embodying therein, or in the record thereof, the engineer's estimate of such deficiency, was ever passed by the board of local improvements, nor was the amount of such deficiency or additional cost ever submitted to property owners at a public hearing thereon at any time previous to the passage of the supplemental ordinance,—or, in other words, that there had been no public hearing whatsoever to consider said deficiency. It was admitted by the objectors that the work specified in the original ordinance had been completed. The objection below was, that because the board of local improvements failed to give notice of a public hearing on such deficiency the court was without jurisdiction to entertain the petition or to order a second assessment to pay the same, the contention being, that inasmuch as the first assessment would have been invalid and the court without jurisdiction to con-

firm the same in the absence of a public hearing before the court, in pursuance of a proper resolution containing the engineer's estimate of the additional cost entered of record in its proceedings, the second or supplemental assessment must likewise be held invalid and the court without jurisdiction. The court below sustained the objection and dismissed the proceeding, and from that order the city has appealed.

The original assessment was levied under the Local Improvement act of 1897. The first sentence of section 59 of that act is as follows: "If in any case the first assessment prove insufficient, a second may be made in the same manner, as nearly as may be, and so on until sufficient moneys shall have been realized to pay for such public improvement." (Hurd's Stat. 1899, p. 374.) This decision must turn upon the proper construction of that language.

"On the subject of the necessity for the proposed improvement, the nature thereof or the cost as estimated," the original assessment would have been invalid under our former decisions, and objectors contend that the language of section 59, *supra*, "in the same manner, as nearly as may be," makes the public hearing equally indispensable in a proceeding to levy a deficiency assessment. On the other hand, counsel for the city insist that the words "a second may be made in the same manner," etc., apply only to the steps to be taken in the actual levying of the second assessment, and have no application to the preliminary steps leading up to the order of the court for such additional assessment.

The question is one of first impression in this court. Counsel for objectors cite the cases of *Union Building Ass.* v. *City of Chicago*, 61 Ill. 439, *Workman* v. *City of Chicago*, id. 463, *Bowen* v. *City of Chicago*, id. 268, and *Philadelphia and Reading Coal Co.* v. *City of Chicago*, 158 id. 9, as bearing upon this question and tending to support their contention. An examination of these cases, however, will show that

they have no proper application to the question now before us. The cases in 61 Ill. construed section 36 of chapter 7 of the city charter of the city of Chicago, which provided: "If from any cause the city shall fail to collect the whole or any portion of any special assessment which may be hereafter levied, and which shall not be canceled and set aside by the order of any court upon *certiorari* or appeal, the common council may, at any time within five years after the confirmation of the original assessment, direct a new assessment to be made upon the delinquent property for the amount of such deficiency, and interest thereon from the date of such original assessment, which assessment shall be made, as near as may be, in the same manner as is herein prescribed for the first assessment." This language, it will be seen, is the same as the language used in the first part of section 48 of article 9 of the City and Village act of 1872 and of section 60 of the act of 1897. All that was said in those cases was said with reference to the attempted levy of a new assessment under the provisions of that section of the city charter. And the case of *Philadelphia and Reading Coal Co.* v. *City of Chicago, supra,* did no more than to construe said section 48 of article 9 of the act of 1872, in which, referring to the first named case in 61 Ill., we said (p. 17): "In *Union Building Ass.* v. *City of Chicago,* 61 Ill. 439, there was involved a proceeding under a section of the special charter of the city, but the court there used language which is in point here. This court said (p. 447): 'The effect of the statute authorizing a new assessment is, that the same shall be made, as nearly as may be, in the same manner as is prescribed for the first assessment. It must in all cases be a *de novo* proceeding. Its departure from the precise mode of making the first assessment can be justified only so far as may be required by the circumstances of each case.'" The additional assessment sought to be levied in this case is not a new assessment, but a supplemental

one, as authorized by said section 59, and can in no sense be deemed a *de novo* proceeding.

In the construction of this section 59 the first question which suggests itself is, when and how must "the first assessment prove insufficient?" That a deficiency exists can only be ascertained in one of two ways and at one of two periods of time,—that is, before the contract for the work is let or after the improvement has been completed. At the time of the bidding, if all responsible bids for the construction of the improvement exceed in amount the assessment then made, it might be said the board could refuse to let the contract, and, estimating the deficiency by the difference between the whole amount of the assessment and the lowest bid, proceed to make a second assessment, in which case the actual deficiency would still be a matter of estimate; or if the contract can be lawfully let to the lowest responsible bidder without reference to the amount of the assessment, then, when the work is completed, the deficiency becomes a mere matter of mathematical calculation, ascertained by deducting the whole amount of the original assessment from the actual cost of the work. The contention of objectors, it seems to us, could only be sustained by holding that the first of these modes of determining the amount of the deficiency should be adopted, because in that view, only, could the preliminary steps, including a public hearing, be of benefit to property holders.

From the best consideration we have been able to give the subject we are convinced that the first sentence of section 59, with other parts of the same section, as well as subsequent provisions, leads to the conclusion that the insufficiency contemplated must be ascertained after the contract has been let and performed. It will be noticed that the foregoing first sentence by its terms can not mean a mere estimated insufficiency, but contemplates an ascertained amount to be thereafter realized "to pay for such public improvement," and the remaining portions

of the section we think clearly indicate that the insufficiency may appear after the improvement is completed. It is a well known fact that the actual cost of a public improvement cannot be estimated with absolute accuracy in advance of the construction of the work. The best estimate that can be made will generally, if not universally, prove too low or too high, and hence this section provides the means of increasing the assessment if the estimate should prove too small, or for refunding ratably to those against whom the assessment was made the excess if the estimate should prove too large. Section 75 provides when the contract shall be let, and the next section (76) requires notice to be given, which "notice shall state the time of opening such bids (not more than fifteen nor less than ten days thereafter.)" Section 77 authorizes the board of local improvements to reject any and all proposals or bids should they deem it for the public good, etc., and section 78 provides: "Any owner or person interested in any of the property assessed and any bidder shall be entitled to a hearing before said board on any question connected with any such award." Then follow the requirements of section 79 that notice of the award of the contract shall be published. Section 80 provides that the owners, or a majority of them, under certain conditions, may do the work, and concludes: "Should the said owners fail to elect to take said work, and to enter into a written contract therefor within ten days, or to commence the work within thirty days after the first posting and publication of said award, and to prosecute the same with diligence, it shall be the duty of the board of local improvements to enter into a contract with the original bidder to whom the contract was awarded, and at the price specified in his bid." None of these sections limit the board to the amount of the assessment in entering into the contract for the work, but, on the contrary, seem clearly to indicate that it may let the contract to the lowest responsible bidder, whether his

bid is greater or less in amount than the estimated cost of the improvement. If this construction is the proper one to be placed upon section 59, as before indicated, it must follow that a recommendation by the board of public improvements for the second assessment, an estimate of the engineer, a public hearing and a second ordinance are each wholly unnecessary to the validity of such second assessment. The law is never construed to require the doing of a useless thing, and if the insufficiency contemplated by the statute is only ascertainable upon the completion of the work, the recommendation, estimate, public hearing and second ordinance could serve no useful purpose. The recommendation for and nature of the improvement, estimated cost and public hearing on the necessity for the improvement, its nature and cost, are all matters which have been considered and disposed of. Certainly the board could not, after the completion of the work, change its recommendation as to the necessity for the improvement, its nature or the engineer's estimate of the cost, nor could the public, at a hearing upon either of these questions, change that which has already been done.

It is said, however, that if the property owners are denied the right to a public hearing upon the deficiency assessment, they will be left at the mercy of an unscrupulous board of public improvements and reckless engineer who may make the estimate, by being induced to withhold opposition to the improvement because of the low estimate of the cost of the work but be afterwards compelled to pay a large deficiency. A sufficient answer to this contention would be, that public officers are presumed to act fairly and honestly toward the public, and that until a case arises in which it is made to appear that they have done otherwise, the court cannot, in the construction of statutes, anticipate misconduct or bad faith. But we do not think that the foregoing construction of the statute will necessarily result in depriving a

property owner of any of his legal rights.    When notified of the public hearing on the first recommendation of the board he is informed of the estimated cost of the improvement, and must be presumed himself to have some knowledge as to whether the estimate is a reasonably fair one.    He is also chargeable with knowledge of the provisions of section 59, authorizing a deficiency assessment in case the first proves insufficient.    He is also, by the provisions of the same section, protected against the liability of having his property assessed for more than it is benefited.    If that question has been settled in the prior proceeding then it is final; if not, it is at least *prima facie* evidence that it has been assessed as much as it is benefited.    (*Greeley* v. *Town of Cicero*, 148 Ill. 632; *McChesney* v. *City of Chicago*, 188 id. 423.)    He has also the right, under section 78, *supra*, to a hearing before the board on the question of the fairness of the contract.

Perhaps our view as to the proper construction of the statute may be more concisely expressed by simply saying that it does not provide for a second assessment to pay an *estimated* insufficiency, but an actual, existing, ascertained insufficiency, which can only be known after the work is actually completed, and therefore none of the preliminary steps leading up to the order of the court making the supplemental assessment are either practicable or essential to the rights of individuals, and that such assessment may, and should, have its origin in a proper petition to the court for an order directing the same to be made.

It follows that in our opinion the county court was in error in dismissing the petition for want of jurisdiction, and its judgment will accordingly be reversed and the cause remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*