## HOME LIFE INSURANCE COMPANY OF NEW YORK
### *v.*
### STATE OF ILLINOIS.

*Opinion filed December 19, 1908.*

1. INSURANCE—*statute with reference to foreign life companies.* This is a claim to recover certain moneys paid to the State of Illinois by claimant, upon premiums collected by it on life insurance policies in this State during the years 1902-1903 and is based upon sec. 200, chap. 73, Hurd's Rev. Stat., relating to Life Insurance, which provides that,

"whenever the existing or future laws of any other state of the United States shall require of life insurance companies, incorporated by or organized under the laws of this State and having agencies in such other state, * * * any payment for taxes, fines, * * * license fees or otherwise, greater than the amount required for such purposes from similar companies of other states, by the then existing laws of this State, then and in every such case, all life insurance companies of such states, * * * shall be and are hereby required * * * to pay to the Auditor, for taxes, fines, * * * license fees or any other obligation, an amount equal to the amount of such charges and payments imposed by the laws of such other state upon the companies of this State * * *."

2. RETROACTIVE OPERATION OF STATUTE—*construction by State official.* The New York Statute provided that all life insurance companies,

"incorporated, organized or formed under, by or pursuant to the laws of any other state of the United States and doing business" in the State of New York, as well as all domestic companies, should pay

"an annual state tax for the privilege of exercising corporate franchises or for carrying on business in their corporate or organized capacity within this State, equal to one per cent on the gross amount of premiums received during the preceding calendar year for business done,"

in that state. The Comptroller of Insurance of New York construed the above statute to the effect that the tax was to be levied on all premiums received during the year, irrespective of whether the premiums were collected on policies issued before or after the act went into effect. The Superintendent of Insurance of Illinois followed the construction placed upon said statute by the Comptroller of Insurance of New York, and held that the claimant should pay to the State of Illinois a one per cent tax upon premiums received

by claimant in this State, and thereupon claimant paid said tax. Later the Court of Appeals of New York, in the case of *People ex rel., Provident Savings Life Assurance Society* v. *Miller, State Comptroller,* 179 N. Y., 227, held, that as to domestic corporations, the tax was limited to premiums collected on policies issued subsequent to the Act going into effect. Claimant, after the above decision had been rendered, contended that the payments were illegal and should be refunded.

3. MISTAKE OF LAW—*defined.* A mistake of law is an erroneous conclusion as to the legal effect of known facts. The construction of words is a matter of law. (*Purvines* v. *Harrison,* 151 Ill., 219.) A mistake of law is one which occurs when a person is truly acquainted with the existence or non-existence of facts, but comes to an erroneous conclusion as to their legal effect. (30 Cyc., 1315.)

4. SAME—*voluntary payment under—no recovery.* The tax having been paid voluntarily, under a mistake of law, and not under a mistake of fact, no recovery may be had. (*Yates* v. *Royal Insurance Co.,* 200 Ill., 202; *Elston* v. *City of Chicago,* 40 Ill., 514; *People* v. *Miner,* 46 Ill., 374; *Swanston* v. *Ijams,* 63 Ill., 165; *Otis* v. *People,* 196 Ill., 542; *Walser* v. *Board of Education,* 160 Ill., 272.)

5. SAME—*voluntary payment under unconstitutional statute—no recovery.* Where a payment is made voluntarily under a statute which is later held to be unconstitutional, there can be no recovery. (*Yates* v. *Royal Insurance Co., supra.*)

6. SAME—*payment under mistaken belief—no recovery.* Payment of money into the treasury of this State under the belief that there was then in existence a particular statute of another state which exacted a tax similar to the statute of this State, is not a mistake of fact; neither is a mistake as to a foreign law a mistake of fact.

7. PRESUMPTION—*of law.* Every person is presumed to know the law in the country where he dwells.

8. CORPORATION—*situs of.* A corporation is a citizen, resident and inhabitant of the state by or under which it was created and of that state only, even though it may be doing business in another state and have part or all of its property there.

9. FOREIGN LAW—*defined.* A foreign law is a law foreign to the residence of the individual making the mistake. (*Marshall* v. *Coleman,* 187 Ill., 556.)

10. RECIPROCAL LAW—*when operative.* The reciprocal law of Illinois has no force or effect until some other state has passed a law taxing Illinois corporations, and then it becomes effective to tax the companies of such other state in the same manner in this State.

11. JUDICIAL NOTICE—*taken of what.* Courts take judicial notice of the construction placed upon a law of a sister state by the courts of that state. (*McDeed* v. *McDeed,* 67 Ill., 545; *Hoes* v. *Van Alstyne,* 20 Ill., 202.)

12. JURISDICTION—*class of claims Court may allow.* Claimant finally contends that on equitable principles it is entitled to recover. The allowance of legal and equitable claims is governed by legal principles. Equity follows the law.

Isham, Lincoln and Beale, for Claimant:

LIQUIDATED CLAIM—what constitutes.

*Hairston* v. *Sumner,* 17 Southern, 709; *Jones* v. *Hunt,* 74 Texas, 657, 12 S. W., 832; *Kennedy* v. *County of Queens,* 47 N. Y. App. Div., 250, 261; *Chicago, etc., Ry. Co.* v. *Clark,* 92 Fed., 968, 985; *Roberts* v. *Prior,* 20 Ga., 561; *Clark* v. *Dutton,* 69 Ill., 521; *Charnley* v. *Sibley,* 73 Fed., 980, 982; *Krueger* v. *State,* Vol. 1, Ill. Court of Claims Reports, p. 336.

Statute of limitations does not run until mistake is discovered.

*McIntosh* v. *Saunders,* 68 Ill., 128; *Gordon* v. *Johnson,* 186 Ill., 18, 31; *Board of Supervisors* v. *Winnebago, etc.,* 52 Ill., 299; 2 Story's Equity Jurisprudence, Par. 1521a.

W. H. Stead, Attorney General, and George B. Gillespie, for State:

A claim is liquidated when the amount due is fixed by law or has been ascertained and agreed upon by the parties, unliquidated when it has not been so settled.

*Chicago, R. I. & P. Ry. Co.* v. *Mills,* 69 Pac., 317; *Commercial Union Assurance Co.* v. *Meyer,* 29 S. W., 93; *Jones* v. *Hunt,* 12 S. W., 832; *Mitchell* v. *Addison,* 20 Ga., 50; *Hargraves* v. *Cooke,* 15 Ga., 321; *Kennedy* v. *Queens Co.,* 62 N. Y. Supp., 276, 47 App. Div., 250; *Kercheval* v. *Doty,* 31 Wis., 476; *Treat* v. *Price,* 66 N. W., 834; *Continental Ins. Co.* v. *Chase,* 33 S. W., 602; *Clark* v. *Dutton,* 69 Ill., 521; *Ostrander* v. *Scott,* 161 Ill., 339; *Warner* v. *Tyler,* 81 Ill., 15; *Underhill* v. *Gaff,* 48 Ill., 198.

Where a tax is voluntarily paid with knowledge of the facts, there can be no recovery.

*Walser* v. *Board of Education,* 160 Ill., 272; *Elston* v. *City of Chicago,* 40 Ill., 514; *The People* v. *Miner, Auditor,* 46 Ill., 374; *Swantson* v. *Ijams,* 63 Ill., 165; *Falls* v. *City of Cairo,* 58 Ill., 403; *Otis* v. *The People,* 196 Ill., 542; *Yates* v. *Royal Insurance Co.,* 200 Ill., 206

Ignorance of the law is no excuse.
*Marshall* v. *Coleman,* 187 Ill., 556, 581.

This is an action to recover back money paid by claimant to the State of Illinois on January 31, 1903, and February 3, 1904, as a tax upon its premium receipts from business done in the State of Illinois, during the years of 1902 and 1903, upon policies issued by claimant prior to January 1, 1902.

Claimant, The Home Life Insurance Company, is a New York corporation, having been incorporated under the laws of that State in 1860, and having done business in the State of New York since its incorporation, and in the State of Illinois for over 30 years.

Section 200, chapter 73, of the Statutes of Illinois, relating to life insurance, provides that "whenever the existing or future laws of any state of the United States * * * shall require of insurance companies incorporated by or organized under the laws of this State and having agencies in such other state, * * * any payment for taxes, fines, * * * license fees or otherwise, greater than the amount required for such purposes from similar companies of other states, by the then existing laws of this State, then and in every such case all companies of such states shall be and are hereby required * * * to pay to the Auditor, for taxes, fines, * * * license fees and otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such state upon the companies of this State."

On March 16, 1901, the legislature of the State of New York passed and the Governor approved a law, the same going into full force and effect on October 1, 1901, which provided that all life insurance companies "incorporated, organized or formed under, by, or pursuant to the laws of any other state of the United States and doing business" in the state of New York, as well as all domestic companies, should pay "an annual state tax for the privilege of exercising corporate franchises or for carrying on business in their

corporate or organized capacity within this State, equal to one per centum on the gross amount of premiums received during the preceding calendar year for business done" in that state, said tax to be paid annually into the State treasury on or before the first day of June.

The Comptroller of Insurance of New York construed the above statute to mean that the tax was to be levied on *all* premiums received during the calendar year, irrespective of whether such premiums were collected on policies issued before or after the Act went into effect.

The Superintendent of Insurance of Illinois followed this construction and prepared printed notices, one of which was sent claimant, under date December 16, 1901, to the effect that there would be due the State of Illinois, from the claimant, "a tax of one per cent on premiums received by claimant, for business done in the State of Illinois during the year 1902," that "the law required these fees and taxes to be paid as a condition precedent to doing business in this State, and that therefore it was absolutely necessary that draft be forwarded" for the same.

Claimant promptly complied with the request of the Superintendent of Insurance and, without any word of protest or complaint of any kind, on January 31, 1903, forwarded to the superintendent a draft, $2,173.86 of the amount of which represented the one per cent of the premiums received by claimant on business done in the State of Illinois for the year 1902.

Subsequently, on February 3, 1904, claimant forwarded to the Superintendent of Insurance the sum of $2,343.87, being one per cent of the premiums received for the year 1903, and on January 27, 1905, the further sum of $2,407.72, premiums for the year 1904. The only notice sent the claimant by the superintendent was the one of December 16, 1901.

In October of 1904, the New York Court of Appeals, in the case of the *People ex rel Provident Savings Life*

*Assurance Society* v. *Miller, State Comptroller,* reported in the 179 N. Y., 227, construed the New York statute differently from the construction placed upon it by the Comptroller and in so doing reversed the Appellate Division.

The case of *People ex rel. Provident Savings Life Assurance Society* v. *Miller* was one where the relator was a corporation, incorporated under the laws of New York and hence, as to that state, a domestic corporation. The Comptroller had assessed said corporation for the year 1901 upon the entire amount of its premium receipts for that year. The Court of Appeals, by a divided Court, two of the five judges dissenting, held that, as to domestic corporations, the tax must be limited to new policy premiums, commencing with those collected during the calendar year 1902, and not upon premiums derived from contracts made prior to January 1, 1902.

Claimant therefore alleges that of the amount of tax paid by it, under the reciprocal law of Illinois to the Superintendent of Insurance of Illinois, in January of 1903 and in February of 1904, upon the business done by it in the State of Illinois, for years 1902 and 1903, respectively, that $1,902.16 paid in 1903 and $1,732.67 paid in 1904, was paid on premiums on policies issued prior to January 1, 1902, and that the said amounts, under the judicial construction of the New York Act of 1901, by the New York Court of Appeals, was an overcharge, was illegally collected and should be paid back, by the State of Illinois, with interest thereon from date of payment.

Claimant made demand upon the Superintendent of Insurance of Illinois for the return of said amounts and upon his refusal to so do, brings its claim before this Court.

Since the filing of this claim, the New York legislature, on March 23, 1905, passed an amendatory Act to the Act of 1901, providing for an annual tax of one per cent "on the gross amount of premiums received during the preceding calendar year for business done"

at any time, in that state, "including all premiums received during such calendar year, on all policies issued or delivered in all years prior to such preceding calendar year."

In *Connecticut Mutual Life Insurance Co.* v. *Kelsey*, 101 N. Y. Supp., 902, the Appellate Division of the New York Court, construed this amendatory Act to require foreign insurance companies doing business in New York to pay said tax upon all premiums collected by said companies in the year 1904, on all policies in force in that state, whenever issued. This opinion has been affirmed by the New York Court of Appeals in 188 N. Y., 541, and claimant therefore makes no claim for a refund or recovery of any portion of the tax paid by it in 1905 to the Superintendent of Insurance of Illinois, on premiums collected in 1904.

It may be said in the outset, that no question of payment under compulsion or duress is urged by claimant in this case, and no evidence of duress appears in the record. Claimant received in December of 1901, from the Superintendent of Insurance of Illinois, notice that the tax in question, on premiums for the year 1902, would be due. Said tax was not due, if due at all, under the New York law until June 1, 1903. The Illinois statute does not require an annual report to be filed until March first. Claimant sent draft for said tax on January 31, 1903, making no protest or complaint about the payment of the tax. In answer to the question, "What reply, if any, did your company make to claimant's exhibit No. 1?" (referring to the notice sent by the Illinois Superintendent), Mr. Marshall, the actuary for claimant, replied, "No reply, except the practical one of paying the tax." The tax on premiums for the year 1903 was not due until June 1, 1904, nor the Illinois report until March 1, 1904. Claimant forwarded same February 3, 1904, on its own motion, without notice from the Superintendent of Insurance of Illinois. The payment therefore was clearly a voluntary one in both cases and the question here is not one as to duress, but

whether claimant can recover back a tax voluntarily paid under mistake, whether of fact or law.

It may next be noted that if the said payments were made by claimant under a mistake of law, there can be no recovery back in this case, of payments so made. This proposition is so elementary and so well established in Illinois, as well as in all other jurisdictions, that citation of authority is hardly necessary. The case of *Yates* v. *Royal Insurance Co.,* 200 Ill., 206, is particularly in point, it being a case where payments were made to the Superintendent of Insurance of Illinois, under a law which was subsequently held to be unconstitutional. So also *Elston* v. *City of Chicago,* 40 Ill., 514; *People* v. *Miner,* 46 Ill., 374; *Swantson* v. Ijams, 63 Ill., 165; *Union Building Association* v. *City of Chicago,* 61 Ill., 439; *Otis* v. *People,* 196 Ill., 542; *Walser* v. *Board of Education,* 160 Ill., 272.

But claimant bases its right to judgment in this cause on the ground that the mistake under which it labored was a mistake of fact and not a mistake of law, and that money paid under a mistake of fact can be recovered back in a proper action. In maintaining this position, claimant's counsel indulge in an exceedingly ingenious argument and predicate it upon two theories: First, that it paid the alleged excess tax under a belief that there was a New York law levying such a tax on foreign companies, that subsequently the New York Courts held that there was no such law and that claimant's mistake was a mistake of the fact of the existence of such a law; and second, that claimant's mistake was of a New York law, that the New York laws are foreign laws as to Illinois, where the transaction was had, and that a mistake of a foreign law is a mistake of fact.

In order to intelligently discuss these propositions, let us see just what the New York legislature and the New York courts did, and what the nature of the mistake was that claimant made.

The New York legislature passed a law levying a tax equal to one per cent "on the gross premiums re-

ceived during the preceding calendar year, for business done'' in the state of New York by both domestic and foreign concerns. The passage of this law in March, 1901, its approval by the Governor and its becoming operative October 1, 1901, are facts concerning which claimant or no one else made a mistake.

The language of the law indicated that the legislature intended to levy the tax on *all* premiums received by companies, during the calendar year, from *all* policies issued by them, irrespective of whether the policies were issued before or after the passage of the law. The Comptroller of New York so construed it and so levied the tax. Claimant followed the Comptroller's construction and paid the tax, according to this construction, both to the Comptroller of New York, on premiums received in New York, and to the Superintendent of Insurance of Illinois, on premiums received on policies in Illinois, and this without complaint or protest.

The Provident Assurance Society, likewise a New York concern, however, refused to follow this construction and filed a suit in the courts of New York to have the law construed. The Appellate Division held the Comptroller's construction to be the correct one. On appeal to the Court of Appeals, this Court of last resort, by a divided Court, two judges dissenting, reversed the Appellate Division and construed the law to mean that only such premiums should be taxed as were received during the calendar year, upon policies issued on and after January 1, 1902.

It will thus be seen that the entire question here was what was the proper construction and interpretation of the law. It was a matter of construction. Claimant construed it one way. The Court construed it another. Claimant misconstrued and misapprehended the meaning of the law. Claimant made no mistake as to the fact of the passage of the law or the fact that the law was in existence, but made its mistake as to the proper interpretation and legal effect of that law.

A mistake of law is an erroneous conclusion as to the legal effect of known facts. The construction of words is a matter of law. *Purvines* v. *Harrison,* 151 Ill., 219, 223. A mistake of law is one which occurs when a person is truly acquainted with the existence or non-existence of facts, but comes to an erroneous conclusion as to their legal effect. 30 Cyc., 1315.

Claimant's argument, that because it believed there was a law in New York taxing premiums on policies issued prior to 1902, that the New York courts subsequently held that the law in force taxed premiums only on policies issued on or after January 1, 1902, and not on policies issued prior to 1902, that therefore there was no law taxing premiums on policies issued prior to 1902, and claimant believing there was such a law, made a mistake of fact and not of law, is purely specious and untenable.

As well might it be said that a tax paid under a law subsequently held unconstitutional was a mistake of fact. In fact, more so, for when a statute is held unconstitutional the authorities all hold that the effect is to render the statute null and void, *ab initio,* from date of enactment, as if there had never been such a law. 8 Cyc., 804.

But the case of *Yates* v. *Royal Insurance Co., supra,* was just such a case. The Royal Insurance Co. believed there was a law in Illinois taxing premiums and paid under that belief; the Illinois Supreme Court held the law under which said tax was paid unconstitutional, and hence null and void, *ab initio,* but our Court held that a tax voluntarily paid under an Act subsequently held unconstitutional is a mistake of law, and not of fact, and cannot be recovered back.

On the proposition of the construction of a law, *Elliott* v. *Swartwout,* 10 Pet., 137, is in point. This was a case where excessive tariff duties were exacted by a collector of import duties, on certain shawls. The collector, in his construction of the provisions of the tariff Act, classified the shawls as manufactures of wool.

Suit was brought to recover back from the collector the excess of duty paid, on the ground that the shawls should have been classified as worsted, the rate on worsteds being lower than the rate on wools. The Court construed the tariff act in such a way as to make the proper classification of the shawls as worsteds, but held that the excess, being voluntarily paid, under a mistake of law, could not be recovered back. The Court say:

"The collector has received the money in the ordinary and regular course of his duty, and has paid it over into the treasury and no objection made at the time of payment. This presents the case of a purely voluntary payment, without objection. It is to be considered as a voluntary payment by mutual mistake of law. The construction of the law is open to both parties and they are each presumed to know it. Any instruction from the Treasury Department could not change the law or affect the rights of plaintiff. He was not bound to take and adopt that construction. He was at liberty to judge for himself and act accordingly. * * * The case put in question is one where no suit would lie at all. It is a case of a voluntary payment under a mistake of law and the money paid into the treasury."

Again the Court say: "There are many doubtful questions of law. When they arise defendant has an option to litigate the question or submit to the demand and pay the money. But it would be most mischievous and unjust if he, who has acquiesced in the right by such voluntary payment, should be at liberty, at any time within the statute of limitations, to rip up the matter and recover back the money. This doctrine is peculiarly applicable to a case where the money has been paid over to the public treasury, as in the question now under consideration."

In *Healey* v. *United States*, 29 U. S. Court of Claims, 115, the U. S. Court of Claims held that "where the law is unsettled, and in doubt, money paid in mistake of its true construction may be considered in the nature

of a compromise and cannot be recovered back." See also *DeBow & Co.* v. *U. S.,* 11 U. S. Court of Claims, 672.

In view of the authorities cited and the facts in this case, we are of the opinion that the mistake made by claimant was a mistake in the interpretation, construction and legal effect of the New York law, not of the fact of the existence of the law, and to that extent was a mistake of law.

But again, claimant contends that as the payment was made in Illinois, under a mistake of a New York law, that the New York law was, as to the place of transaction, a foreign law and that a mistake of a foreign law is a mistake of fact.

It is conceded that claimant was a New York corporation, incorporated and organized under the laws of New York. "The status of a corporation is determined by the place of its origin." 19 Cyc., 1204. "A corporation is a citizen, resident and inhabitant of the state by or under which it was created and of that state only, even though it may be doing business in another state and have part or all of its property there." 19 Cyc., 1219, and authorities there cited. Claimant was therefore a resident of New York.

It is also a well established principle that "every person is presumed to know the law of the country in which he dwells or resides." 16 Cyc., 1083 and cases cited. "All persons subject to a law are irrebuttably presumed to know what it is." Wharton on Civil Evidence, 3 Ed., 1240. Claimant resided in New York and was presumed to know the law of that state. There is also no question that as a domestic insurance corporation in New York, claimant was "subject" to the law in question, for the same law which taxed foreign companies taxed domestic companies as well. Claimant was amenable to that law and complied therewith. It was then presumed to know this law and the presumption is "irrebuttable."

Claimant construes the term "foreign law" to mean a law foreign to the *locus* of transaction. What it seeks here to take advantage of is the rule that a mistake of a foreign law is a mistake of fact. What then is the meaning of the term "foreign law" as here used? Foreign as to whom? Obviously, foreign as to the person making the mistake, who is seeking to recover back what was paid under such mistake and not foreign to the place of transaction. Claimant made the mistake in this case. How then can it be said that claimant made a mistake of a law foreign to it, when its mistake was of the law of its own state?

In the case of *Marshall* v. *Coleman,* 187 Ill., 581, our Courts have substantially construed the term "foreign law," in this connection, to mean a law foreign to the residence of the individual making the mistake. In that case Mrs. Coleman had an inheritance and rights to property in Illinois. The Illinois property was the subject matter of the proceedings, which proceedings were held in Illinois, yet our Court held that, "being a resident of Colorado she was not affected with knowledge of the statutes of Illinois, in which State she did not reside." Place of residence of the individual, who made the mistake, was here made the criterion as to what was a foreign law. Why should not the same rule apply to claimant in the case at bar?

The reciprocal law of Illinois has no force and effect until some other state has passed a law taxing Illinois concerns, and then it becomes effective to tax the companies of such other states in Illinois in the same manner. The tax is levied upon corporations of such other states, upon their business in this State. It is based upon the presumption that the corporations, in such other states, come into Illinois with full knowledge of the law of their own state and with knowledge of what their own state taxes Illinois companies, doing business in their state, and that, if they propose to transact business in Illinois, they will be subject to the same tax in Illinois that their own state levies on Illinois

concerns, and this as a condition of their entrance to this State to transact business. The reciprocal law of Illinois deals with foreign companies as such, is directed solely against foreign concerns and has no other object.

In this entire transaction, claimant's status is that of a New York corporation. If it had not been a foreign corporation, it would not have been taxed. Even though the transaction in part occurred in Illinois, claimant's character in the transaction is that of a corporation incorporated in New York and the application of any law to claimant, in this matter, must of necessity be an application to claimant in its capacity as a New York corporation. As a New York corporation, it must then be charged with knowledge of the laws of New York, and any mistake as to that law is a mistake of the law of its own state and therefore a mistake of law.

It would be stretching a technicality to its utmost to say that claimant, coming into this State as a foreign corporation, being allowed the privileges of this State as a foreign corporation, by laws of comity, being taxed as a foreign corporation for the reason that the laws of its own state tax foreign corporations there, should be allowed, in a transaction of this kind, to divest itself of its character, as a foreign corporation and place itself on the plane of a domestic corporation, in order that it may take shelter under the rule that a mistake of a foreign law is a mistake of fact.

Claimant argues, in this connection, that "suppose claimant had refused to pay the tax and some action had been brought to determine whether the Illinois law required the payment of the tax on gross receipts; to prove that the tax was due it would have been necessary to give evidence of the New York statute as of any other fact," and concludes that if the Court itself is not presumed to know the New York law, how is claimant presumed to know it?

This would depend upon the forum where the action was brought. If in Illinois, this might be true; but if brought in New York, claimant would not be claiming there that the New York Act was a foreign law or that claimant was not presumed to have knowledge of the Act, neither would it be necessary to introduce proof of it, for the New York courts would take judicial knowledge of the law.

But claimant contends that the transaction was had in Illinois, and that in Illinois proof of a New York statute must be made as a fact. But, as we have already shown, claimant's mistake in this case was not a mistake of the fact that there was a New York statute taxing premiums on policies, but its mistake was as to the interpretation, construction and legal effect of that statute. Proof of the statute would, it is true, have to be made in an Illinois proceeding, as a fact, but not so, as to the construction and interpretation placed upon it by the New York courts. The Illinois courts would take judicial knowledge of the construction of the law as given by the New York courts.

"Courts have uniformly taken notice of the construction given to foreign statutes, by foreign tribunals; and to enable them to do this, they always have been in the habit of looking to the reports of such tribunals." *McDeed* v. *McDeed*, 67 Ill., 545; *Hoes* v. *Van Alstyne*, 20 Ill., 201.

Again, it should be noted that even if, in the first instance, in a legal proceeding in Illinois, the taxing statute of New York would have had to be proven as a fact, that, as soon as so proven as a fact, it then and thereupon becomes, in effect, the law of Illinois. In ordinary cases, where proof is made of foreign statutes, the foreign statute is a fact before proof and remains and continues, after proof, to be a fact for all time and for all purposes. But under our reciprocal law, the fact once proven is incorporated into and in effect becomes the Illinois law.

Referring to the reciprocal statute of Illinois, our Court, in *Germania Ins. Co.* v. *Swigert,* 128 Ill., 246, say: "The manifest purpose of this enactment is to restrict insurance companies of other states in doing business in this State, by precisely the same restrictions with which insurance companies of this State are restricted in such other states, and so, necessarily, our law must read, with respect to insurance companies of Louisiana doing business in this State, in the exact language and meaning of the law of Louisiana, with respect to insurance companies of other states doing business in that state."

In *Talbott* v. *Fidelity Co.,* 74 Md., 536, in construing the reciprocal insurance law of Maryland, with reference to the New York law, the Court say: "When the New York statute imposes an obligation or a prohibition not found in ours, that obligation and prohibition must be treated as if found in so many words in our statute and enforced accordingly. Our statute makes the New York law our law, to control the action of our Commissioners of Insurance."

In any view of the case taken, we are of the opinion that claimant made payment of the alleged excess taxes, in this case, under a mistake of the construction, interpretation and legal effect of a law of the State, in which claimant resided, and hence its mistake was a mistake of law.

But a still more serious feature of this case has not been adverted to either in the briefs of claimant or of the State. The reciprocal law of Illinois has to do only with the question of whether or not the laws of other states tax Illinois corporations doing business in those states. For the purpose of our reciprocal statute, it is immaterial whether or not the New York law taxes its own corporations but the all-important question here is: Did the New York law provide for a tax upon premiums upon policies issued prior to January 1, 1902, by Illinois and other corporations foreign to New York?

—4 C C

That in the case of *People ex rel Provident Savings Life Assurance Society* v. *Miller,* the New York Court of Appeals held that the New York law did not apply to premiums on policies issued prior to 1902, by domestic insurance corporations, is conceded. But has it even passed upon that proposition, with reference to companies foreign to New York? Has that feature of the law as yet received judicial construction?

The Provident Assurance Society was a domestic concern incorporated in New York, and the question before the New York Court was purely with reference to domestic companies. In fact, the Court in its opinion takes pains to differentiate between the application of the law to domestic and foreign concerns, and bases its differentiation upon the differentiation mentioned in the New York law.

Domestic corporations, in a state, transact business by virtue of their corporate franchises; foreign corporations by virtue of the laws of comity.

The New York law levied the premium tax on domestic companies, as the law specifically states, "for the privilege of exercising corporate franchises." It levied the tax on foreign companies, not for the privilege of "exercising corporate franchises," but for the privilege of "carrying on business in their corporate organized capacity within the State." In this regard, domestic and foreign corporations were placed on a different footing.

The Court, in its opinion, holds that domestic corporations cannot be taxed on premiums on policies issued by domestic concerns prior to 1902, because such premiums were collected on "past contracts," which "did not depend upon the exercise of the franchises." This is the basic principle of the opinion and it has reference, and reference alone, to the case of domestic corporations, to the exclusion of foreign concerns.

The Court say: "The tax is purely a franchise tax, and nothing else," as to domestic corporations. The

tax imposed for carrying on business in their corporate organized capacity, (quoting the language of the statute) applies only to foreign corporations deriving their franchises from other sovereignties.

The Court does not say whether a tax on premiums received from policies issued prior to 1902, by foreign concerns, such tax being for the privilege of "carrying on business within the State," is a proper tax or not. It might or it might not be. It does not follow from analogy from the opinion rendered, in the case of domestic concerns. The conditions are different. The Court did not adjudicate this question. It has never adjudicated it. It remains just where it was when claimant paid its tax to the Superintendent of Insurance of Illinois.

We have not undertaken to discuss the authorities cited by claimant, from other jurisdictions than our own, the proposition of law here involved being variously construed in the various jurisdictions, some holding to the rule rigidly, and others to varying extents, modifying the same.

In Illinois the rule has been most rigidly and strictly enforced. In fact, our authorities have gone so far as to hold that where a tax has been levied without any authority of law whatsoever and paid voluntarily, with a full knowledge of the circumstances under which it was demanded, it cannot be recovered back. *Elston* v. *City of Chicago,* 40 Ill., 514.

A school district which has collected its full tax levied cannot recover from another district taxes collected by it upon lands within the former, through a mistake of the clerk as to the location of the lands, although the rate per cent of tax as extended in the former was thereby made greater than it otherwise would have been. *Walser* v. *Board of Education,* 160 Ill., 272.

Taxpayers in one school district, who voluntarily pay a tax, levied by mistake upon their lands to another district, cannot recover back the same, where the books were kept open and means of knowledge of all the facts

existed, although they supposed they were paying the tax of the district in which their lands lay. *Walser* v. *Board of Education, supra.*

With reference to the question raised of claimant's equitable position for recovery, it need only be said that in the application of the rule herein discussed, equity follows the law. *Upton* v. *Tribilcock*, 91 U. S., 45; 30 Cyc., 1314, and authorities cited.

In view of the facts in this case and the authorities applicable thereto, we are of the opinion that the alleged excess payments made by claimant to the Superintendent of Insurance of Illinois, under the operation of the reciprocal law of Illinois, cannot be recovered back and the claim is therefore rejected.